IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRANDON SHOWELL,

        Petitioner,

v.                                                                                          Civil Action No. 20-1759-GBW

SCOTT CERESINI, Warden, and
ATTORNEY GENERAL OF THE
STATE OF DELAWARE,

        Respondents.[1]

---

Brandon Showell. *Pro se* Petitioner.

Andrew J. Vella, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

## MEMORANDUM OPINION[2]

February 6, 2024
Wilmington, Delaware

---

[1] Warden Scott Ceresini has replaced former Warden Truman Mears, an original party to this case. *See* Fed. R. Civ. P. 25(d).

[2] This case was re-assigned to the undersigned's docket on September 7, 2022.

Williams, District Judge:

Presently pending before the Court is Petitioner Brandon Showell's ("Petitioner") Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (D.I. 1; D.I. 9) The State filed an Answer in opposition. (D.I. 14) For the reasons discussed, the Court will deny the Petition.

## I. BACKGROUND

On June 5, 2018, a police officer stopped Petitioner after witnessing him drive through two stop signs without stopping. (D.I. 14 at 3; D.I. 15-15 at 1) The police officer asked for Petitioner's license, registration, and proof of insurance. Petitioner was unable to produce a driver's license and, after providing the police officer with the name "Fontane Lamont Nichols," Petitioner attempted to put the vehicle's gear shift into drive. The police officer jumped onto the running board of the vehicle and attempted to grab the gear shift. A struggle ensued, causing the vehicle to shift back and forth. The officer deployed his taser, but it was lost in the struggle and fell onto the roadway. The officer's arm became stuck in the steering wheel, and he fell off the running board several times, causing him to be "dragged" down the road. When the vehicle came to a complete stop, Petitioner exited the vehicle and fled on foot. The events leading up to this point in time were captured by the police motor vehicle recorder ("MVR"). (D.I. 14 at 3-4; D.I. 15-15 at 1-2)

The officer pursued Petitioner, and Petitioner was apprehended after the police officer drew his firearm. The officer was taken to the hospital and diagnosed with a herniated disc and a concussion. (D.I. 14 at 4)

On June 18, 2018, a Sussex County grand jury indicted Petitioner on charges of second degree assault, first degree reckless endangering, two counts of possession of a deadly weapon during the commission of a felony ("PDWDCF"), resisting arrest, criminal mischief, and traffic charges. (D.I. 15-1 at Entry No. 2; D.I. 14 at 1) Petitioner filed a motion to suppress evidence (D.I. 15-1 at Entry No. 4; D.I. 15-9), which the Superior Court denied after a hearing. (D.I. 14 at 2; D.I. 15-1 at Entry No. 4)

On September 4, 2019, Petitioner pled guilty to second degree assault, first degree reckless endangering, and resisting arrest. (D.I. 14 at 2; D.I. 15-23 at 3) In exchange for Petitioner's plea, the State entered a *nolle prosequi* on the remaining indicted charges and agreed to cap its Level V sentence recommendation at five years. (D.I. 15-11 at 1) The Superior Court sentenced Petitioner on October 25, 2019 to an aggregate 15 years of incarceration, suspended after serving four years at Level V, followed by decreasing levels of supervision. (D.I. 15-12) Petitioner did not appeal his convictions or sentence.

On January 13, 2020, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").

(D.I. 15-13) The Superior Court denied the Rule 61 motion on September 24, 2020. (D.I. 15-19) Although Petitioner appealed that decision, the Delaware Supreme Court dismissed his appeal as untimely. *See Showell v. State*, 242 A.3d 778 (Table), 2020 WL 6791488, at *1 (Del. Nov. 18, 2020). Petitioner filed a second Rule 61 motion on February 19, 2021 (D.I. 15-20), which the Superior Court denied on June 16, 2021. (D.I. 15-23) Petitioner did not appeal that decision. (*See* D.I. 15-1 at 8) Thereafter, on December 27, 2021, Petitioner filed a motion for modification of sentence, which the Superior Court denied on January 26, 2022. (D.I. 15-1 at Entry Nos. 78, 79) Petitioner filed a second motion for modification of sentence on April 21, 2022, which the Superior Court denied on April 24, 2022. (D.I. 15-1 at Entry Nos. 81, 82)

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural


requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

4

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If a petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

5

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[3] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means

---

[3] *Murray,* 477 U.S. at 496.

6

factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## III. DISCUSSION

Petitioner's timely-filed Petition and Amended Petition assert the following three Claims: (1) trial counsel provided ineffective assistance during the suppression hearing by failing to present the police officer's medical records; (2) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to collect and later produce information about an unidentified "cooperative" witness; and (3) trial counsel provided ineffective assistance by failing to investigate the "cooperative eyewitness information" that the State allegedly suppressed.

Petitioner did not appeal his conviction, and his appeal from the Superior Court's denial of his Rule 61 motion was dismissed as untimely. Consequently, all three Claims are unexhausted because Petitioner did not fairly present them to the Delaware Supreme Court.

At this juncture, any attempt by Petitioner to raise the arguments in a new Rule 61 motion in order to appeal any adverse decision would be barred as untimely under Delaware Superior Court Rule 61(i)(1) and as second or successive under Rule 61(i)(2). *See* Del. Super. Ct. Crim. R. 61(i)(1) (establishing a one-year deadline for filing Rule 61 motions); Del. Super. Ct. Crim. R. 61(i)(2) (providing that second or successive motions shall be summarily dismissed unless they meet the pleading requirements of Rule 61(d)(2)(i) or (ii)). Although Rule 61 provides for an exception to its procedural bars if a Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant Claims. Similarly, the exceptions to the bars contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to the instant arguments. Therefore, Claims One, Two, and Three are procedurally defaulted, which means that the Court cannot review their merits absent a showing of either cause and prejudice or that a miscarriage of justice will result absent such review.

Petitioner does not explicitly assert any cause for his failure to exhaust state remedies for Claims One, Two, and Three. To the extent Petitioner's statement that the Superior Court did not appoint counsel to represent him during his Rule 61 proceeding (D.I. 1 at 3) should be liberally construed as an attempt to establish

8

cause under *Martinez v. Ryan*, 566 U.S. 1 (2012), it is unavailing. In *Martinez*, the Supreme Court held that inadequate assistance of counsel or the absence of representation during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *Id.* at 16-17. In order to obtain relief under *Martinez*, a petitioner must demonstrate that: (1) the procedural default was caused by either the lack of counsel or post-conviction counsel's ineffective assistance during the petitioner's first collateral proceeding in which the claim could have been heard; and (2) the underlying ineffective assistance of defense counsel claim is substantial (*i.e.*, has "some merit"). *See Cox v. Horn,* 757 F.3d 113, 119 (3d Cir. 2014). The Supreme Court held that this narrow exception to the procedural default doctrine only applies to errors occurring during the initial collateral proceeding, and "does not concern errors in other kinds of proceedings, **including appeals from initial-review collateral proceedings.**" *Martinez,* 566 U.S. at 16 (emphasis added); *see also Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015). The Supreme Court explained that, "[w]hile counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Martinez,* 566 U.S. at 11. Here, the *Martinez* rule is inapplicable, because Claim Two does not

9

assert an IATC argument, and Petitioner's default of Claims One and Three occurred on post-conviction appeal, not during the "initial-review collateral proceeding."

In the absence of cause, the Court need not address the issue of prejudice. Additionally, the miscarriage of justice exception does not excuse Petitioner's procedural default because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims One, Two, and Three for being procedurally barred.[4]

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, when a district court denies a habeas claim or petition on procedural grounds without reaching the

---

[4]Having determined that Claims One, Two and Three should be denied as procedurally barred, the Court will not address the State's alternative arguments. (*See* D.I. 14 at 11-20)

10

underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the claim or petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, the Court will deny the instant Petition without holding an evidentiary hearing or issuing a certificate of appealability. The Court will enter an order consistent with this Memorandum Opinion.

11